RENDERED:  JANUARY 16, 2026; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1328-MR

CARROLL PROPERTIES LLC                                    APPELLANT


v.
APPEAL FROM BOYLE CIRCUIT COURT
HONORABLE JEFF L. DOTSON, JUDGE
ACTION NO. 22-CI-00179


DANNA S. HAMMONS; HARRIET A.
MONIN, TRUSTEE OF THE
HARRIET A. MONIN REVOCABLE
TRUST; JEFF D. HAMMONS;
RHEANNA S. LYNCH; AND SHAWN
CARROLL                                                      APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, McNEILL, AND TAYLOR, JUDGES.

CALDWELL, JUDGE:  Carroll Properties LLC ("Carroll Properties"), appeals

from the Boyle Circuit Court's order granting summary judgment to Danna[1]

---

[1] Also spelled "Dana" Hammons at times in the record.  We use Danna as that is the name listed in the notice of appeal.

Hammons, Jeff Hammons (collectively, "the Hammons"), and Harriet A. Monin, trustee of the Harriet A. Monin Revocable Trust ("Monin"). We affirm.

The essential facts are not disputed. This appeal involves three contiguous lots in the Donnybrook Estates Subdivision. Each lot runs from a roadway to, roughly, the shoreline of Herrington Lake (which is owned by Kentucky Utilities). The Hammons own what is listed as Lot 4 on the subdivision plat, which was recorded in the Boyle County Clerk's office in 1971. Monin owns what the plat lists as Lot 3. Carroll Properties asserts it owns an unnumbered parcel of land between lots 3 and 4, which we shall simply refer to as "the parcel." On the plat, "50' R/W" is written on the parcel. All parties accept that language means "fifty-feet right-of-way." Rheanna Lynch ("Lynch") is listed as one of the owners of the land dedicated by the plat. Over time, Lynch became the purported sole owner of the parcel. In other words, Lynch's purported ownership of the parcel may be traced to the developers of Donnybrook Estates.

In 2017, Lynch executed a deed purporting to sell the parcel to Carroll Properties. The deed for that transaction provides in relevant part that the parcel was sold "subject to such valid and existing restrictions . . . as may be revealed in the record chain of title, including the possible easement rights of any owner of a lot in Donnybrook Estates to use the above described lot to access Lake Herrington . . . ." Trial Court Record ("R.") at 19.

In 2022, Monin and the Hammons brought this action against Carroll Properties and one of its members, Shawn Carroll ("Carroll"). According to Monin and the Hammons, Carroll had threatened to build a dock for his sole usage on the parcel or to otherwise obstruct the usage of the parcel by other landowners. The complaint asked for a declaration of rights as to whether Carroll Properties could interfere with other Donnybrook Estates landowners' usage of the parcel. Later, Monin and the Hammons amended their complaint to add Lynch as a defendant and sought to void the deed from her to Carroll Properties.

Eventually, Monin and the Hammons filed a motion for summary judgment, which the trial court granted. The court later issued a supplementary order voiding the deed from Lynch to Carroll Properties.[2] Carroll Properties then filed this appeal, naming Monin, the Hammons, Carroll, and Lynch as appellees.[3]

We have set forth the familiar standards governing our review of an order granting summary judgment as follows:

> An appellate court must review a trial court's interpretation of statutes and its grant of summary judgment *de novo* (without deference) on appeal.
>
> In reviewing the grant of summary judgment, we also consider whether the trial court correctly determined

---

[2] Judge Jeff Dotson granted summary judgment to the Hammons and Monin shortly before his tragic passing. Judge Dan Kelly issued the supplementary order voiding the deed.

[3] Because their interests were aligned in the trial court, it is unclear why Carroll Properties named Lynch or one of its own members, Carroll, as appellees. Regardless, neither Lynch nor Carroll has actively participated in this appeal.

that no genuine issues of material fact exist and that the moving party was entitled to judgment as a matter of law. We also keep in mind the trial court's obligation to view the evidence in the light most favorable to the opposing party and to determine if genuine issues of material fact exist – but not to decide issues of fact – when faced with a motion for summary judgment.

*Meier v. Jeff Wyler Alexandria, Inc.*, 685 S.W.3d 9, 11 (Ky. App. 2024) (footnote and citations omitted).

The question we must resolve is whether land on a dedicated, recorded plat set aside for usage of the public or other subdivision owners may later be sold as private property. Under these facts, the answer is no.

Though it was rendered over seventy years ago, the seminal opinion on the issue is *Cassell v. Reeves*, 265 S.W.2d 801 (Ky. 1954). *Cassell* involved whether a person would be able to build a home on one of two lots left unnumbered on a subdivision plat. *Id.* at 802.

The Court resolved the dispute in relevant part as follows:

It is a settled principle that when a map or plat of a subdivided tract of land is exhibited or recorded and conveyances are made of the lots by reference thereto, the plat becomes a part of the deeds, and the plan shown thereon is regarded as a unity. **And, nothing else appearing, it is held that all the streets, alleys, parks or other open spaces delineated on such map or plat have been dedicated to the use of the purchasers of the lots and those claiming under them as well as of the public. They become appurtenances to the lots. It is presumed that all such places add value to all the lots embraced in the general plan and that the**

-4-

**purchasers invest their money upon the faith of this assurance that such open spaces, particularly access ways, are not to be the private property of the seller**.

. . .

It is not necessary that dedication to public use should be in writing or in any particular form. It is enough that the intention at the time to dedicate appears and the subsequent public use completes the act of dedication. Dedication by plat is a common method, and in its interpretation all doubts as to the intention of the owner are resolved most strongly against him. While it is generally held that merely leaving a blank on the plat without designation of its purpose does not of itself sufficiently indicate an intention to dedicate the space to public use, nevertheless, other circumstances and conditions may show such intention. Such special condition is leaving an unmarked space or strip between a street shown on the plat and a navigable river. And, generally, an open or vacant space may be held devoted to public use where from its position on and relation to the plat such appears to have been the intention of the owner. . . .

. . .

We are of opinion, therefore, that the judgment should have declared lot (X) to have been dedicated to the use of all owners of lots in the subdivision.

*Id.* at 802-03 (emphasis added) (citations omitted).

Here, there is a much more unmistakable indication than in *Cassell* that the parcel was dedicated to the usage of the public or all owners of lots in the subdivision as the plat specifically denotes the parcel as a right-of-way. Therefore, the parcel is "not to be the private property of the seller." *Id.* at 802.

*Cassell* is not an outlier. Our Supreme Court reached the same core conclusion in *Herron v. Boggs*, 582 S.W.2d 643 (Ky. 1979). In *Herron*, a developer, Boggs, built a home on the portion of a subdivision marked as a park on the subdivision plat. *Id.* at 643-44. Our Supreme Court held that "[w]hen Boggs recorded the plat and sold lots in accordance with the plat, this constituted a dedication of the streets and the PARK to the public and thereby divested Boggs of legal title to the area." *Id.* at 644.[4] Thus, the other subdivision owners "were entitled to a judgment directing Boggs to move his residence off the PARK and requiring him to restore the area where the residence is located to its original condition." *Id.* Finally, our Supreme Court rejected Boggs' claim that he was entitled to relief under principles of equitable estoppel because "Boggs knew the facts as well as did movants. His change of position was in reliance on an erroneous belief that he retained legal title to the PARK . . . ." *Id.*

---

[4] We are perplexed and disappointed by Carroll Properties' erroneous argument in its reply brief that our Supreme Court held in *Herron* that Boggs "retained 'legal title to the PARK, subject to the lot owners' right of use.'" Reply Brief, p. 3 (quoting *Herron*, 582 S.W.2d at 644). The language quoted by Carroll Properties is our Supreme Court's summary of the trial court's holding: "the trial court concluded as a matter of law that the PARK was dedicated for the use of the lot owners with a holding that Boggs retained legal title to the PARK, subject to the lot owners['] right of use." *Herron*, 582 S.W.2d at 644. Our Supreme Court summarily reversed the trial court on that issue: "When Boggs recorded the plat and sold lots in accordance with the plat, this constituted a dedication of the streets and the PARK to the public and thereby divested Boggs of legal title to the area. In this respect the judgment of the trial court is erroneous." *Herron*, 582 S.W.2d at 644.

We are bound to follow *Cassell* and *Herron*.  SCR[5] 1.030(8)(a).  The sweeping language in those two cases unmistakably indicates that land on a plat which was set aside as being dedicated for the usage of the public or other subdivision owners loses its character as the private property of the developer once the plat is dedicated, recorded, and lots depicted on it are sold to others.

In plain English, *Cassell* and *Herron* hold that Lynch—whose purported ownership rights derive from the Donnybrook Estates developers—has lost her private ownership rights to the parcel.  Since Lynch did not own the parcel, she could not sell it to Carroll Properties (or anyone else).  *York v. Perkins*, 269 S.W.2d 242, 243 (Ky. 1954) ("It is elementary that a deed can only convey title to land actually owned by grantor and the grantee takes no greater title under a deed than the grantor had.");[6] 26A C.J.S. *Deeds* §21 (2025) ("Generally, a grantor can convey no greater estate than the grantor has, or in which the grantor has an alienable title or interest.  It follows that a deed from a person without title or interest which the person may convey is inoperative as a conveyance, and the grantees will take nothing where the grantor has no interest which the grantor can convey.") (footnotes omitted).

---

[5] Kentucky Rules of the Supreme Court.

[6] We agree with Carroll Properties that *York* is factually distinguishable from the case at hand; we disagree with Carroll Properties that those factual distinctions exempt this case from the fundamental principle of *York* that a person may not sell property he or she does not own.

Carroll Properties admits the parcel was set aside for the usage of other Donnybrook Estates owners, but nonetheless contends Lynch "had the ability to convey title" to the parcel as a "servient estate." Appellant's Opening Brief at 7. As a matter of general legal principles, we agree with Carroll Properties that land subject to an easement is transferrable. However, we perceive nothing in the straightforward language of *Cassell* or *Herron* to indicate that a developer retains *any* private ownership rights to land designated on a dedicated plat for the usage of others. On the contrary, *Cassell* plainly held such land is "not to be the private property of the seller[,]" *Cassell*, 265 S.W.2d at 802, and *Herron* held that a developer does not have "legal title" to such land. *Herron*, 582 S.W.2d at 644.

Of course, it is beyond reasonable dispute that to validly transfer property one must actually have a legally cognizable ownership interest in it. Regardless of whether we would reach a similar result on a blank slate, *Cassell* and *Herron* make plain that Lynch had no such private ownership interest in the parcel. Thus, Lynch had no ability to sell the parcel to Carroll Properties, as a servient estate or otherwise. And so, her attempt to convey the parcel to Carroll Properties was ineffective even though the deed reciting that attempted transaction was otherwise facially valid. Although issued in a distinguishable factual context, we agree with the reasoning of the Supreme Judicial Court of Massachusetts that "[w]here, as here, the grantor has nothing to convey, a mutual intent to convey and

receive title to the property is beside the point. The purported conveyance is a nullity, notwithstanding the parties' intent." *Bongaards v. Millen*, 440 Mass. 10, 15, 793 N.E.2d 335, 339 (2003). We therefore perceive no error in the trial court's decision to void the null, ineffective deed from Lynch to Carroll Properties.

Finally, since the only question properly before us is whether Carroll Properties validly bought the parcel from Lynch, we decline to address the ancillary concerns raised by Carroll Properties. Determining matters such as who should be responsible for the parcel's upkeep and who must pay the property taxes on it are beyond the limited scope of this appeal (especially since Carroll Properties has no legally cognizable interest in the parcel and thus lacks standing to raise questions about the ownership and usage of the parcel going forward).

We have examined the parties' briefs but have concluded anything therein which we have not discussed lacks merit or relevancy to resolving this appeal. *Schell v. Young*, 640 S.W.3d 24, 29 n.1 (Ky. App. 2021).

For the foregoing reasons, the Boyle Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Dan Thompson
Somerset, Kentucky

BRIEF FOR APPELLEES DANNA
HAMMONS, JEFF HAMMONS &
HARRIET A. MONIN, TRUSTEE OF
THE HARRIET A. MONIN
REVOCABLE TRUST:

Brendan J. Shevlin
Danville, Kentucky

NO BRIEF FOR APPELLEE
SHAWN CARROLL.

NO BRIEF FOR APPELLEE
RHEANNA LYNCH.

-10-